IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BARCODING, INC., | * | |
| Plaintiff | * | |
| v. | * | CIVIL NO. JKB-11-2026 |
| NICO GENET, *et al.*, | * | |
| Defendants | * | |

## MEMORANDUM

Barcoding, Inc. ("Plaintiff") brought this suit against Nico Genet, Genet Solutions, Inc., and Strategic Mobility Group, LLC ("Defendants"), alleging breach of contract, unjust enrichment, and tortious interference, and seeking a declaratory judgment of its contractual rights and obligations *vis-à-vis* Defendants. Defendants now move that the Court abstain from exercising jurisdiction of this case and Plaintiff moves to deposit allegedly disputed funds into the Court. The issues have been briefed and no oral argument is required. Local Rule 105.6. For the reasons explained below, Defendants' Motion for Abstention (ECF No. 12) and Plaintiff's Motion to Deposit Funds (ECF No. 3) are both DENIED.

I.     BACKGROUND

Plaintiff, a Delaware corporation with a principal place of business in Baltimore City, Maryland, is a provider of inventory management products and services. Defendant Nico Genet ("Genet"), a resident of Schaumburg, Illinois, is a former sales and account representative of Plaintiff. Defendant Genet Solutions, Inc. ("GSI"), an Illinois corporation with a principal place

1

of business in Schaumberg, Illinois, is a company created by Genet for the purpose of conducting business in connection with his work as Plaintiff's sales and account representative. Defendant Strategic Mobility Group, LLC ("SMG"), an Illinois limited liability company with a principal place of business in Schaumberg, Illinois, is a provider of inventory management products and services, also organized by Genet, and is the successor in interest to GSI. This action is one of several pending suits arising from alleged contractual relationships between Plaintiff and Defendants.

Genet began working for Plaintiff as an independent sales representative in or around 2001. (Genet Complaint for Declaratory Judgment ¶ 7, ECF No. 1-1, Ex. A). The same year, he formed his own sales company, Defendant GSI, and hired several sub-representatives to sell Plaintiff's products. In or around December of 2002, Genet signed a "Vendor Confidentiality and Ownership Rights Agreement," which allegedly obligated him not to compete with Plaintiff or disclose any of its confidential information. Over the next ten years, Genet and GSI developed a large network of customers. These customers would purchase Plaintiff's equipment by placing orders with GSI, who would then submit the orders to Plaintiff. In March of 2011, Genet terminated his relationship with Plaintiff and restructured GSI as a limited liability company, which became Defendant SMG. The business, however, remained identical; SMG succeeded GSI in all its rights and interests and continued to cater to the same network of clients.

On March 30, 2011, Genet filed a complaint against Plaintiff in the Circuit Court for Cook County, Illinois, seeking a declaratory judgment that the Vendor Agreement is unenforceable. Plaintiff filed a counterclaim, seeking a declaratory judgment that the Vendor Agreement is enforceable and alleging breach of contract, tortious interference, and unjust

enrichment. Plaintiff also moved for a temporary restraining order to prevent Genet from soliciting what it claims are its customers. The court denied the motion.

On May 9, 2011, Defendant SMG filed a complaint in the same court against a former GSI employee, Matthew Cunningham, who had gone to work for Plaintiff. SMG alleged that Cunningham violated a written non-solicitation agreement by attempting to solicit SMG customers for Plaintiff. SMG moved for a temporary restraining order against Cunningham, which the court granted.

On July 22, 2011, Plaintiff filed the instant complaint in this Court. The Complaint (ECF No. 1) alleges that the terms of Plaintiff's relationship with Genet were set out in a "Commission Agreement," which provided that Genet would work to promote Plaintiff's brand recognition, consult with it on business strategy, and procure customers in exchange for commissions of 50% of the cash receipts for business that he generated. Plaintiff further claims that the Commission Agreement put a number of restrictions on Genet's activities. Specifically, the Agreement allegedly required Genet to work exclusively for Plaintiff and use only Plaintiff's name in dealing with potential customers, and prohibited him from disclosing or appropriating any of Plaintiff's trade secrets or other confidential information and from soliciting or hiring any of Plaintiff's other employees without its consent. Plaintiff alleges that in 2004 GSI was made a party to the Commission Agreement, and that it has since paid Genet his commissions through GSI.

Plaintiff alleges that during Genet's final months as its sales representative, he and GSI/SMG began to recruit its employees and solicit its customers on their own behalf. Specifically, Plaintiff alleges that GSI instructed its employees to encourage customers to cancel their orders with Plaintiff and buy directly from GSI instead, and that GSI successfully recruited

one of its sales representatives, Robert Shaull, and induced him to breach his contractual obligations not to compete with Plaintiff or to disclose or appropriate its confidential information. Finally, Plaintiff alleges that on April 13, 2011, GSI's counsel sent it a letter claiming that it owed GSI more than $580,000 in commissions and threatening immediate suit if Plaintiff did not pay. The Complaint seeks a declaratory judgment that Plaintiff does not owe Defendants any commissions, and money damages for alleged breach of the Commission Agreement, tortious interference with contracts, tortious interference with prospective advantage, and unjust enrichment.

Two motions are currently pending: (1) Defendants' request that the Court abstain from exercising jurisdiction of this case under the *Colorado River* doctrine on the grounds that Plaintiff's claims are allegedly duplicative of its counterclaim in the pending state court action; and (2) Plaintiff's application for leave, pursuant to Fed. R. Civ. P. 67, to deposit with the Court the commissions payments that Defendants have allegedly demanded, and which are the subject of the declaratory judgment Plaintiff seeks.

**II.     STANDARD OF REVIEW**

*Colorado River* **Abstention**

Federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given to them. *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246 (1976). However, under the doctrine announced by the U.S. Supreme Court in *Colorado River*, they may abstain from exercising that jurisdiction "in the exceptional circumstances when a federal case duplicates contemporaneous state proceedings and wise judicial administration ... clearly favors abstention." *Vulcan Chem. Techs. v. Barker,* 297 F.3d 332, 340 (4th Cir. 2002). Importantly, "in assessing whether *Colorado River* abstention is appropriate, a district court must

remain mindful that this form of abstention 'is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it' and that '[a]bdication of the obligation to decide cases can be justified under [abstention] only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest.'" *Chase Brexton Health Services, Inc. v. Maryland*, 411 F.3d 457, 463 (4th Cir. 2005) (quoting *Colorado River*, 424 U.S. at 813). If such circumstances do exist, however, then the decision whether to exercise jurisdiction is committed to the sound discretion of the district court. *See id* at 464 (citation omitted).

### Fed. R. Civ. P. 67

Federal Rule of Civil Procedure 67(a) provides:

> If any part of the relief sought is a money judgment or the disposition of a sum of money or some other deliverable thing, a party--on notice to every other party and by leave of court--may deposit with the court all or part of the money or thing, whether or not that party claims any of it. The depositing party must deliver to the clerk a copy of the order permitting deposit.

The main purpose of the deposit is to "relieve the depositor of responsibility for a fund in dispute." CHARLES ALLAN WRIGHT, *ET AL.*, 12 FED. PRAC. & PROC. CIV. § 2991 (2d ed.). "The decision whether to allow a Rule 67 deposit generally lies within the discretion of the district court." *LTV Corp. v. Gulf States Steel, Inc. of Alabama*, 969 F.2d 1050, 1063 (D.C. Cir. 1992).

### III. ANALYSIS

#### A. *Colorado River* Abstention

The threshold question for purposes of a *Colorado River* abstention is whether "parallel" suits are pending in state and federal court. *Great American Ins. Co. v. Gross*, 468 F.3d 199, 207 (4th Cir. 2006). Defendants argue that this action is parallel to Plaintiff's state court counterclaim because both sets of claims arise from the parties' previous business relationship

5

and contain the same four causes of action for declaratory judgment, breach of contract, tortious interference, and unjust enrichment. However, the fact that the legal theories and factual allegations of one case overlap with those of another does not automatically make the cases parallel. *See New Beckley Min. Corp. v. Int'l Union, United Mine Workers of Am.*, 946 F.2d 1072, 1074 (4th Cir. 1991). Rather, cases are parallel only if they contain "substantially the same issues" and if the parties in each are "nearly identical." *Great Am.*, 468 F.3d at 208 (internal quotation marks omitted). After comparing the instant complaint to Plaintiff's state court Counterclaim, the Court finds them to be substantially different.

Count I of the Complaint alleges that Genet and GSI breached the Commission Agreement by recruiting Plaintiff's employees and soliciting its customers for themselves. (Compl. ¶¶ 36-41). Plaintiff's Counterclaim in the state court litigation alleges that Genet breached the Vendor Agreement by soliciting Plaintiff's customers. While these claims obviously contain a common question of fact – i.e., whether Genet solicited Plaintiff's customers – they are not substantially the same. First, this case involves a wholly different contract than the state court action, and proving the existence and content of that agreement will involve legal and factual inquiries that will not be resolved in state court.[1] Second, contrary to Defendants' assertions, the breach that Plaintiff alleges here is not identical to the breach alleged in the Counterclaim. The Counterclaim alleges only that Genet solicited Plaintiff's customers, whereas the complaint here further alleges that Defendants recruited Plaintiff's employees to compete against it. Finally, neither GSI nor SMG are named as defendants in the Counterclaim.

---

[1] Defendants allege in their memoranda that Plaintiff has "conjured up" a "fictitious" oral commissions agreement solely for the purpose of facilitating forum shopping because it is unhappy with the results of the state court litigation. (Def.'s Rep. 1, 5-6, ECF No. 19). If Defendant has evidence to support such allegations, however, they are more properly raised in a motion for summary judgment and/or Rule 11 sanctions.

Count II is a demand for a declaratory judgment that Plaintiff does not owe Defendants any further commissions. (Compl. ¶¶ 42-46). The Counterclaim, on the other hand, seeks a declaratory judgment that that the Vendor Agreement is enforceable. These claims are patently different and Defendants' argument that they are parallel simply because they both seek declaratory judgments on contract issues is without merit.

Count III alleges, as an alternative to breach of contract, that Defendants have been unjustly enriched by retaining commission payments Plaintiff has made to them. (Compl. ¶¶ 47-51). The Counterclaim also contains a count of unjust enrichment, but the gravamen of that claim is that Genet has unjustly enriched himself by exploiting Plaintiff's Midwest customer base that it developed at its own expense. (Countercl. ¶¶ 37-39). Although the difference between these claims is subtle, the parties are not identical, and the conduct alleged is distinguishable.

Counts IV and V assert claims for tortious interference with contracts against GSI and SMG on the grounds that they allegedly induced Plaintiff's employees and customers to breach their existing contractual obligations. (Compl. ¶¶ 52-63). The Counterclaim contains a count of tortious interference with contracts against Genet for allegedly dissuading potential customers from entering contracts with Plaintiff in the first place. These claims plainly involve different parties, different factual allegations, and different contracts.

Count VI is a claim of tortious interference with prospective advantage against GSI and SMG for allegedly interfering with Plaintiff's business relationships with potential customers. (Comp. ¶¶ 64-69). Here, the claim is substantially the same as that in the state court action, but the parties different.

In view of the foregoing analysis, the Court concludes that counts I, II, IV, and V of the instant complaint are clearly not duplicative of the state court litigation. Counts III and VI, on the other hand, present a murkier picture. However, as explained below, even assuming these claims to be parallel to those in the Counterclaim, the Court does not find that any extraordinary circumstances exist that would justify abrogating its jurisdiction in this case.

If a court finds that federal and state court actions are parallel, then it must balance several factors to determine whether abstention is appropriate. Although the list is not exclusive, courts usually consider the following six factors: (1) whether the state court has exclusive *in rem* jurisdiction of real property involved in the suits; (2) whether the federal forum is convenient; (3) whether abstention would avoid piecemeal litigation; (4) the order in which the state and federal courts obtained jurisdiction and the respective progress made in those courts; (5) whether the merits of the claims are governed by state or federal law; and (6) whether the state forum will adequately protect the parties' rights. *Great Am.*, 468 F.3d at 207-08 (citation omitted). Importantly, in balancing these factors, the balance is "heavily weighted in favor of the exercise of jurisdiction." *Id* at 207 (internal quotation marks omitted).

The first factor clearly is not relevant, as this dispute does not involve real property. Similarly, the fifth and sixth factors do not apply, as this case does not involve the assertion of any federal rights or interests. *See Banco Popular North America v. Bean,* Civil Case No. CCB-11-0661, 2011 WL 2746570 (D. Md. July 11, 2011) (observing that presence of federal question and inadequacy of state forum weigh in favor of retaining jurisdiction, but that absence of federal question and adequacy of state forum do not weigh in favor of abstention except in "rare circumstances") (citing *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 (1983); *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 717-18 (1996)); *but c.f. Automated*

8

*Systems and programming, Inc. v. Cross*, 176 Supp.2d 458, 463 (D. Md. 2001). And, as the actions were filed only a few months apart, the order of jurisdiction is also not particularly significant. *See New Beckley*, 946 F.2d at 1074 (holding that order of jurisdiction was unimportant where claims were filed "in March and December of the same year"). Only the third and fourth factors – convenience of the forum and the avoidance of piecemeal litigation – arguably weigh in favor of abstention. The Court finds, however, that these factors, even given their full weight, amount to no more than what is inherent in all parallel litigation. First, although there is clearly significant factual overlap between the state and federal claims, it is unclear from the face of the pleadings to what extent the resolution of one set of claims would preclude litigation of the other. It is possible, for instance, that an adverse ruling on Plaintiff's state court counterclaim of unjust enrichment (against Genet for exploiting its Midwest customer base) would not preclude Plaintiff from continuing its claim here against GSI and SMG for unjustly retaining commission payments. In that event, an abstention by this Court would do little to prevent piecemeal litigation. Second, although Defendants allege that Maryland is an inconvenient forum, the dearth of other factors supporting abstention makes this argument largely immaterial because, standing alone, the proper remedy for this burden is a motion for transfer of venue on the grounds of *forum non-conveniens*.

The Court admittedly has doubts about the utility of allowing these claims to proceed simultaneously in state and federal court. The law is clear, however, that in evaluating a motion for abstention, the Court's task "is not to find some substantial reason for the *exercise* of federal jurisdiction," but "to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' ... to justify the *surrender* of that jurisdiction." *Moses H. Cone,* 460 U.S. at 25-26 (1983) (emphasis in original). Although the Court finds that certain of the claims asserted here

are very similar to those asserted in Illinois state court, and that proceeding with litigation in this Court will undoubtedly result in some degree of inefficiency and waste, the Court nevertheless sees nothing in this case that is sufficiently compelling to meet the high bar for abstention that has been set by the Supreme Court and the Fourth Circuit. Therefore, Defendants' Motion for Abstention (ECF No. 12) is denied.

### B. Deposit of Funds

Authority on the application of Rule 67 is scant, particularly in this circuit. It is clear, however, that the Rule contemplates a live dispute as to the disposition of the money to be deposited. If the question of entitlement to the money is not genuinely in dispute at the time of the application, then the court should not allow the deposit. *Alstom Caribe, Inc. v. George P. Reintjes Co.*, 484 F.3d 106, 113 (1st Cir. 2007); *see also Gulf States Utils. Co. v. Ala. Power Co.*, 824 F.2d 1465, 1475 (5th Cir. 1987). In this case, there is no live dispute as to the disposition of any particular funds in the possession of either party. Although Plaintiff alleges that Defendant has threatened to sue it for commission payments it believes are due, Defendants have asserted no such claim in this Court. And, Plaintiff's action for a declaratory judgment of its obligations under the Commissions Agreement, whatever the outcome, cannot result in a "money judgment" nor can it "dispose" of any sum of money. *See* Fed. R. Civ. P. 67(a).

Furthermore, Plaintiff alleges that Defendants have demanded the ongoing payment of commissions on a bi-weekly basis. If true, then the "funds" allegedly at issue would continue to increase as the litigation progresses, which would likely require a series of deposits. As other courts have noted, administering such deposits, especially in large sums, places a significant and unnecessary burden on the Clerk of the Court. *Kansas City Southern Ry. Co. v. Borrowman*, No.

09-3094, 2009 WL 3188305 at *4 (C.D. Ill. September 30, 2009) (unpublished); *Design Ben. Plans, Inc. v. Enright*, 940 F.Supp. 200, 207 (N.D. Ill. 1996).

For these reasons, Plaintiff's Motion to Deposit Funds (ECF No. 3) is denied.

## IV. CONCLUSION

Accordingly, an order shall issue DENYING Defendants' Motion for Abstention (ECF No. 12) and Plaintiff's Motion to Deposit Funds (ECF No. 3).

Dated this 29th day of September, 2011

BY THE COURT:

/s/
James K. Bredar
United States District Judge